**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DISTRICT OF COLUMBIA,<br>*Plaintiff*,<br>v.<br>MARIA SHERIDAN, *et al.*,<br>*Defendants*. | Civil Action No. 25 - 1580 (LLA) |

## MEMORANDUM OPINION

This case arises from administrative proceedings that Maria and Brian Sheridan brought against the District of Columbia under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* ECF No. 1, at 2-6. After an administrative hearing officer rejected the Sheridans' claims and concluded that the District of Columbia Public Schools ("DCPS") could provide the Sheridans' child, Megan Sheridan ("Meg")[1], a free and appropriate public education ("FAPE"), the hearing officer nevertheless ordered that the District fund Meg's placement in a private school for the remainder of the 2024-25 school year. ECF No. 1 ¶¶ 24-29; *see* ECF No. 6-1, at 22. The District then filed this suit, alleging that the hearing officer erred in ordering it to continue to fund Meg's placement despite concluding that DCPS had neither violated any of Meg's rights nor denied her a FAPE. ECF No. 1. Before the court is the District's motion to dismiss the case without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). ECF No. 14. The Sheridans oppose dismissal and wish to proceed with summary judgment briefing.

---

[1] The Sheridans used Meg's name rather than her initials in their most recent brief because she has turned eighteen. *See* ECF No. 15, at 2.

ECF Nos. 15, 16. For the following reasons, the court will grant the District's motion and dismiss the case without prejudice.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Meg was first deemed eligible to receive special education and related services under the IDEA during the 2014-2015 school year, when she lived with her parents in Virginia. ECF No. 1 ¶¶ 7-8. Meg's parents enrolled Meg at the Lab School of Washington, a private school, in 2015, but their local school district did not fund her placement there. *Id.* ¶¶ 9-11; *see* ECF No. 5 ¶¶ 9-11. In 2019, the Sheridans moved to the District of Columbia., ECF No. 1 ¶ 12, and the District covered Meg's placement at the Lab School. *Id.* ¶¶ 13-15. In October 2023, DCPS developed an individualized education plan ("IEP") for Meg that provided resources including twenty hours per week of specialized instruction, 120 minutes per month of occupational therapy services, and other accommodations. *Id.* ¶ 15. DCPS proposed that Meg attend Jackson-Reed High School, a DCPS public school, which could implement her IEP. *Id.*

In July 2024, the Sheridans sent a letter informing DCPS that Meg would be attending the Lab School for the upcoming year notwithstanding the IEP. *Id.* ¶ 16. The Sheridans filed a due process complaint against DCPS and met with the IEP team in October to develop an updated IEP. *Id.* ¶¶ 17-18. That proposed IEP again included services to be implemented at Jackson-Reed High School. *Id.* Because the parties remained at an impasse as to which school Meg should attend, the District funded Meg's attendance at the Lab School pursuant to the IDEA's stay-put provision. *Id.* ¶ 20.

In November 2024, the Sheridans filed an amended due process complaint. *Id.* ¶ 19. They alleged that DCPS had denied Meg a FAPE by failing to provide her with an appropriate IEP and educational placement for the 2023-2024 and 2024-2025 school years. *Id.* The hearing officer

held a due process hearing in February 2025 and issued a decision that same month. *Id.* ¶¶ 22-23. He dismissed the Sheridans' claims with prejudice, concluding that DCPS did not deny Meg a FAPE and that both the October 2023 and October 2024 IEPs were adequate. *Id.* ¶¶ 24-27; *see* ECF No. 6-1, at 22. The hearing officer accordingly concluded that the Lab School was "not an appropriate prospective placement for" Meg. ECF No. 6-1, at 21. But he also determined that because Meg had remained at the Lab School through the pendency of the administrative proceedings and was set to graduate later that year, it was "appropriate for [her] to remain at [the Lab School]." *Id.* at 21-22.

In May 2025, the District filed this action, alleging that the hearing officer erred in ordering it to continue funding Meg's placement at the Lab School despite his dismissal of the Sheridans' claims. ECF No. 1 ¶¶ 33-34. The complaint seeks reversal of the hearing officer's determination, an order that the District is not required to fund Meg's placement at the Lab School, and other relief the court deems proper. *Id.* at 6. Meg graduated from the Lab School in June 2025. ECF No. 5 ¶ 8; *see* ECF No. 6, at 2. Neither the District nor the Sheridans have paid the Lab School for Meg's tuition from February 2025 to June 2025. *See* ECF No. 9, at 3-4.

In August 2025, the Sheridans filed a motion for a preliminary injunction under the IDEA's stay-put provision. ECF No. 6. The District filed an opposition to the Sheridans' motion and, in the alternative, a cross-motion for a preliminary injunction. ECF No. 7. On February 5, 2026, the court held a hearing on the cross-motions. The court denied the Sheridans' motion for a preliminary injunction, noting that the request for a stay-put injunction was moot because Meg had already graduated from the Lab School. Feb. 5, 2026 Minute Entry; *see* ECF No. 14, at 7. The court also denied as moot the District's cross-motion for a preliminary injunction because the

cross-motion sought only to "block" the Sheridans' requested preliminary injunction. Feb. 5, 2026 Minute Entry.

The parties subsequently filed two status reports regarding the schedule for briefing summary judgment. *See* ECF Nos. 12, 13. The Sheridans maintained that District ought to withdraw its case, but sought in the alternative to file a motion for summary judgment prior to any discovery or production of the administrative record. ECF No. 12, at 2-3. The court set a summary judgment briefing schedule, *see* Apr. 10, 2026 Minute Order, and then the District filed a motion to dismiss one day before the Sheridans' summary judgment motion was due, ECF No. 14. The Sheridans filed a combined motion for summary judgment and opposition to the motion to dismiss that next day, ECF Nos. 15, 16, and the District filed its reply in support of its motion to dismiss, ECF No. 17. The court then stayed the District's obligation to respond to the Sheridans' motion for summary judgment in light of the pending motion to dismiss. *See* Apr. 28, 2026 Minute Order.

## II. LEGAL STANDARDS

"Where, as here, the defendant[s] ha[ve] already answered the plaintiff's complaint, the plaintiff 'may' . . . voluntarily dismiss [its] action 'only by court order, on terms that the court considers proper.'" *Guttenberg v. Emery*, 68 F. Supp. 3d 184, 187 (D.D.C. 2014) (quoting Fed. R. Civ. P. 41(a)(2)). Federal courts generally grant voluntary dismissals "unless the defendant would suffer prejudice other than the prospect of a second lawsuit or some tactical disadvantage." *Conafay ex rel. Conafay v. Wyeth Lab'ys*, 793 F.2d 350, 353 (D.C. Cir. 1986); *see* 9 Charles Alan Wright et al., *Federal Practice and Procedure* § 2364 (4th ed. 2026) (noting that "a very significant number of courts have followed the traditional principle recognized by the federal courts that dismissal should be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit"). A court assessing a motion under Rule 41(a)(2)

will thus generally assess "(1) whether the motion 'was sought in good faith' and (2) whether the defendant 'would suffer legal prejudice from a dismissal at this stage in the litigation.'" *N.S. ex rel. S.S. v. District of Columbia*, 272 F. Supp. 3d 192, 196 (D.D.C. 2017) (quoting *Indep. Fed. Sav. Bank v. Bender*, 230 F.R.D. 11, 13 (D.D.C. 2005)).

## III. DISCUSSION

The District argues that dismissal is warranted because it seeks dismissal in good faith and because the Sheridans will suffer no legal prejudice. ECF No. 14, at 6-8. The court agrees and will dismiss the case without prejudice. To begin, the Sheridans provide no basis for the court to conclude that the District acted in bad faith by moving to dismiss the case. They argue that the District's initial appeal of the hearing officer's decision was pointless because the District was nonetheless obligated to fund Meg's tuition at the Lab School under the IDEA's stay-put provision. ECF No. 15, at 8-9. But the inquiry is not whether the District's choice to *initiate* this case was wise—it is whether the District's request to *dismiss* the case is motivated by bad faith.

In answering this question, the court notes that the procedural posture of this case was unusual and caused reasonable confusion among the parties. The hearing officer drew conclusions that were seemingly contradictory—both dismissing the Sheridans' claims that the District was obligated to fund Meg's attendance at the Lab School under the IDEA while simultaneously ordering that the District continue funding Meg's attendance there. ECF No. 6-1, at 22. While the Sheridans argue that the District's decision to appeal the hearing officer's determination was unreasonable, the District, as a repeat player in IDEA litigation, credibly maintains that it *continues* to believe that the hearing officer's determination was contrary to law. ECF No. 14, at 6; *see* ECF No. 1 ¶¶ 33-35 (challenging the substantive basis for the hearing officer's determination and requesting that the court set it aside). In light of the hearing officer's contradictory conclusions,

the District may well have prevailed on its merits arguments had the case not become moot by virtue of Meg's graduation from the Lab School. *See* 34 C.F.R. § 300.102(a)(3)(i) (noting that a school's obligation to provide a student with a free and adequate public education "does not apply with respect to . . . [c]hildren with disabilities who have graduated from high school"); *see also K.B. ex rel. Brown v. District of Columbia*, No. 13-CV-649, 2015 WL 5191330, at *7 & n.6 (D.D.C. Sep. 4, 2015) (collecting cases and explaining that a "number of courts have found that a student's high school graduation . . . can moot a claim for declaratory and injunctive relief under the IDEA if the plaintiff has not requested relief in the form of tuition reimbursement or compensatory education"). Although the court need not find the District's choice to initiate this lawsuit reasonable for purposes of the instant motion, the unusual posture of this case reinforces the District's proffered good-faith explanation for seeking dismissal now that Meg has graduated. Absent any evidence to the contrary, the court concludes that the District's motion to dismiss its own suit based on its decision to pay the outstanding tuition was "sought in good faith." *N.S. ex rel. S.S.*, 272 F. Supp. 3d at 196 (quoting *Indep. Fed. Sav. Bank*, 230 F.R.D. at 13).

The District also argues that the Sheridans will suffer no legal prejudice from dismissal. ECF No. 14, at 7-8. Courts in this district often apply a multi-factor balancing test to assess legal prejudice, considering:

> (1) the defendants' effort and expense for preparation of trial;
>
> (2) excessive delay or lack of diligence on the plaintiff['s] part in prosecuting the action;
>
> (3) the adequacy of plaintiff['s] explanation of the need for dismissal; and
>
> (4) the stage of the litigation at the time the motion to dismiss is made, specifically whether a motion for summary judgment is pending.

*In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 304 (D.D.C. 2000); *see, e.g.*, *WildEarth Guardians v. Haaland*, No. 16-CV-1724, 2022 WL 1773474, at *5 (D.D.C. June 1, 2022); *Ctr. for Biological Diversity v. Jackson*, No. 10-CV-2007, 2012 WL 13046335, at *1 (D.D.C. Apr. 30, 2012). But the D.C. Circuit has not expressly endorsed this test. Indeed, as another court in this district has acknowledged, the D.C. Circuit's definition of legal prejudice appears to be "more restrictive" and thus friendlier to a plaintiff seeking dismissal. *N.S. ex rel. S.S.*, 272 F. Supp. 3d at 198; *see Blue v. D.C. Pub. Schs.*, 764 F.3d 11, 19 (D.C. Cir. 2014) ("Because dismissal of claims against a defendant rarely prejudices that party, the grant of a voluntary dismissal is virtually automatic."). Because the District itself cites, and indeed satisfies, the more capacious balancing test, the court will analyze those factors without weighing in on the open question. *See* ECF No. 14, at 7.

First, the Sheridans' effort and expense for preparation of trial is negligible because the parties have yet to set a trial date. Second, despite the Sheridans' arguments to the contrary, the court concludes that the District has been sufficiently prompt in prosecuting this case. The District timely filed this lawsuit within ninety days of the hearing officer's determination, *see* ECF No. 1, timely served the Sheridans, *see* ECF No. 4, and filed this motion to dismiss the case within a few months after the court's preliminary-injunction hearing, *see* ECF No. 14. All in all, this case has been pending for just fifteen months, with roughly half of that time attributable to the court's assessment of the Sheridans' own motion for preliminary relief and the District's now-pending motion to dismiss. While the Sheridans point to a few months between the initial filing and service, and between the preliminary injunction hearing and the District's motion to dismiss, *see* ECF No. 15, at 9, those periods are far from "excessive delay," *compare Hisler v. Gallaudet Univ.*, 344 F. Supp. 2d 29, 38 (D.D.C. 2004) (finding that a plaintiff's four-month delay in identifying an issue was not "excessive" where she "[o]verall" had "complied with orders" and timely filed her

motions), *with Hubbard v. United States*, 545 F. Supp. 2d 1, 7-8 (D.D.C. 2008) (finding an excessive delay where the plaintiff had failed to respond to a pending summary judgment motion for over one year before moving to dismiss). Indeed, while it took the District a few months to move for dismissal, it was filing routine status reports that reflected counsel's active communications both with its client (DCPS) and the Sheridans. *See* ECF No. 12 (March 2026 status report); ECF No. 13 (April 2026 status report); ECF No. 15-5 (April 2026 email chain between counsel about the District's intent to seek dismissal).

Third, the court must assess the adequacy of the District's basis for seeking dismissal. The District explains that "based on the arguments at the February 5, 2026 hearing and the Court's questions regarding the operation of the IDEA's stay put provision in this action, the District determined that it would not be in its best interest to pursue this litigation, despite its position that the hearing officer erred." ECF No. 14, at 6. The District now seeks to pay the remaining balance of Meg's tuition at the Lab School, effectively mooting the matter. *See id.* at 5. This rationale is sound. As the court noted above, the preliminary injunction hearing clarified both that the preliminary injunction sought by the Sheridans was inappropriate in light of Meg's graduation, and also that the District may nevertheless be required to pay for her final months of tuition under the IDEA's stay-put provision despite any error in the hearing officer's determination. ECF No. 14, at 6; ECF No. 15, at 9 n.2. If the District's subsequent review of the evidence led the District to determine that pursuing this lawsuit is no longer in its best interest, the court sees no reason to second-guess that judgment.

Finally, the current stage of litigation slightly favors dismissal. The parties have not engaged in discovery, and the District filed its motion one day before the Sheridans moved for summary judgment. *See* ECF Nos. 14, 16. To be sure, the timing of the District's motion

effectively required the Sheridans to expend the resources necessary to prepare their motion for summary judgment. But the Sheridans' own exhibit indicates that the District had communicated its intent to seek dismissal on April 7, 2026, before the court had even set a summary judgment briefing schedule. ECF No. 15-5; *see* Apr. 10, 2026 Minute Order.

Put simply, dismissal will end this dispute. The underlying administrative decision, and the District's enforceable obligation to pay the contested tuition, will stand. ECF No. 14, at 6-8. Courts are most likely to express concerns about legal prejudice where the defendant is left "open to potential new litigation despite already having invested resources defending itself." *WildEarth Guardians*, 2022 WL 1773476, at *5. Here, there is no such concern because, as the District notes, the ninety-day statute of limitations for the District to appeal the hearing officer's determination has already expired. ECF No. 14, at 7; *see* 20 U.S.C. § 1415(i)(2)(B). The Sheridans dispute none of this. Instead, they chiefly argue that "[t]hey should not bear the legal fees and costs to defend this baseless lawsuit, which has now been abandoned." ECF No. 15, at 8-9. But to defeat voluntary dismissal, the Sheridans must show legal prejudice. And the D.C. Circuit has made clear that the deprivation of a defendant's opportunity to obtain a favorable judgment does not constitute such prejudice. *See Kellmer v. Raines*, 674 F.3d 848, 851 (D.C. Cir. 2012) (reversing a district court's denial of a voluntary dismissal because the defendants had "suffered no legal prejudice whatsoever" despite losing the opportunity for a favorable disposition). The District has made the requisite showing for voluntary dismissal.

But the court's inquiry is not over yet, because Rule 41(a)(2) gives a district court discretion "both as to whether a dismissal shall be allowed as well as to the terms and conditions to be imposed if allowed." *N.S. ex rel. S.S.*, 272 F. Supp. 3d at 196 (quoting *Wojitas v. Cap. Guardian Tr. Co.*, 477 F. 3d 924, 927 (7th Cir. 2007)). "One of the 'terms' upon which the Court

may condition dismissal is the payment of the defendant[s'] attorneys' fees and costs." *Mittakarin v. InfoTran Sys., Inc.*, 279 F.R.D. 38, 41 (D.D.C. 2012). But "[o]nly where th[o]se fees and costs 'were undertaken unnecessarily' have the courts in this Circuit seen fit to reimburse plaintiffs for their litigation expenses." *Guttenberg*, 68 F. Supp. 3d at 188 (quoting *GAF Corp. v. Transamerica Ins. Co.*, 665 F.2d 364, 367 (D.C. Cir. 1981)). Generally, courts find this condition met when the plaintiff erroneously filed in one federal court, "discovered that federal jurisdiction could not be maintained[,] and consequently sought a voluntary dismissal in order to pursue its claims in another forum.'" *Mittakarin*, 279 F.R.D. at 42 (quoting *SBM Wageneder Gesellschaft, m.b.H. v. Am. Arb. Ass'n*, 113 F.R.D. 659, 662 (D.D.C. 1987)).

The Sheridans have already recouped attorney's fees for the underlying administrative proceedings that resulted in the hearing officer's decision. *See* ECF No. 15, at 3. Although they took on additional costs to defend in this lawsuit, "[t]he fact that [a] defendant was forced to respond to [a] plaintiff['s] motions does not constitute prejudice warranting an award of fees." *SBM Wageneder Gesellschaft*, 113 F.R.D. at 663. Here, the District is not dismissing its case to pursue its claims in another forum. Because the IDEA's statute of limitations has already expired, *see supra* p. 9, there is "no risk of future litigation," ECF No. 14, at 7. Thus, the rationale of reimbursing a defendant who may need to defend himself in duplicative lawsuits is inapplicable. *See District of Columbia v. Proud Boys Int'l, L.L.C.*, No. 21-CV-3267, 2025 WL 823904, at *2 (D.D.C. Mar. 14, 2025) (explaining that "when a plaintiff dismisses an action with prejudice, attorneys' fees [or costs] are usually not a proper condition of dismissal because the defendant cannot be made to defend again" (quoting *AeroTech Inc. v. Estes*, 110 F.3d 1523, 1528 (10th Cir. 1997))).

The court is especially disinclined to conclude that the Sheridans' costs were taken "unnecessarily," where, as the parties readily admit here, it was the court's questioning at the preliminary injunction hearing that helped the parties clarify the applicable law in a novel procedural posture. *See* ECF No. 14, at 6-7; ECF No. 15, at 4 (explaining that this case "presents somewhat unique circumstances"); *id.* at 9 n.2 (explaining that "[w]hile defendant[s'] motion for preliminary injunction was ultimately denied, it was as a result of that oral argument that plaintiff apparently made the decision not to pursue this appeal"); *see also Guttenberg*, 68 F. Supp. 3d at 189 (finding that preliminary motions and the court's resolution of those motions were not "unnecessary" but instead "'served the salutary purpose of clarifying the law for the plaintiff'" (quoting *SBM Wageneder Gesellschaft*, 113 F.R.D. at 663)). The court thus declines to exercise its discretion to condition dismissal on the award of attorney's fees.

## IV. CONCLUSION

For the foregoing reasons, the court will grant the District's motion to dismiss the case without prejudice, ECF No. 14, and deny as moot the Sheridans' motion for summary judgment, ECF No. 16. A contemporaneous order will issue.

LOREN L. ALIKHAN
United States District Judge

Date: August 31, 2026